KEYSTONE LUMBER YARD v. YAZOO & MISSISSIPPI VALLEY
RAILROAD COMPANY.

[47 South. 803.]

1. SUPREME COURT PRACTICE. *Demurrer to declaration. Good causes not assigned.*

A demurrer to a declaration will not be sustained by the supreme court on a ground not presented to nor passed upon by the trial court.

2. PLEADING AND PRACTICE. *Declarations. Writings filed with. Demurrers.*

A declaration at law may so plead the legal effect of a writing filed with it as to present the instrument itself for consideration on the hearing of a demurrer to the pleading.

3. RAILROAD COMMISSION. *Rule 10. Delayage. Declaration for. Necessary averment.*

A declaration against a common carrier for delayage, predicated of rule 10 of the Mississippi Railroad Commission, prescribing a penalty for delaying shipments "by side-tracking in transit," is demurrable if it fail to charge that the delayage sued for was caused by such side-tracking.

FROM the circuit court of Yazoo county.

HON. J. B. HOLDEN, Special Judge.

The Keystone Lumber Yard, appellant, was plaintiff in the court below; the Yazoo & Mississippi Valley Railroad Company, appellee, was defendant there. From a judgment sustaining the appellee's demurrer to plaintiff's declaration and, plaintiff declining to amend, dismissing the suit, plaintiff appealed to the supreme court.

The plaintiff's declaration alleged that: "Defendant, before and at the time of the making of the defaults hereinafter mentioned, was a common carrier of goods and chattels for hire, from all of the points named in the bill of particulars filed here-

with, to Yazoo City, Mississippi, and the plaintiff caused to be delivered to said defendant at divers and sundry times from November 11, 1904, to September 23, 1907, inclusive, divers and sundry cars loaded with lumber, an itemized statement of which is filed herewith as 'Exhibit One,' and as a part hereof, showing the car initials of every car, the consignor of every car and the consignee (the plaintiff) of every car, the station from which every car was shipped, the point to which they were shipped (namely, Yazoo City), the date of the shipment of each car, the date each and every car was delivered to the plaintiff as consignee, the total number of days each car was en route, the days required for the transit of each and every car from the shipping point to Yazoo City, and the total number of days that each car was delayed in reaching plaintiff as consignee in Yazoo City, over and above the time required for its transportation, and the amount claimed by plaintiff against defendant for failure to deliver each car as defendant was obligated under the law to do, goods and chattels in each and every car being of the value of $200 to $600, to be taken care of and safely and promptly carried by the defendant from the sundry points afore-referred to, to the said point of destination and to be promptly delivered by defendant to plaintiff at Yazoo City, for certain reward in that behalf, in a reasonable time then next following; and although the defendant received the said cars so loaded with lumber as aforesaid, the defendant failed to deliver the said car within a reasonable time and in the reasonable time required by the demurrage and delayage rules fixed by the railroad commission of the state of Mississippi, which rules are in words and figures as shown in Exhibit Two hereto, made a part hereof;—to the damage of the plaintiff in the sum of $5,000," etc.

To this declaration the railroad company, appellee, demurred, on the following grounds:

"(1) That no cause of action is stated in said declaration against the defendant. (2) That said cause of action is based solely on the rules and regulations adopted by the railroad com-

mission of the state of Mississippi, on the 8th day of June, 1904, and in said rules and regulations no right of action is granted to the consignee for delay of shipments, but same is confined entirely to the shipper. (3) That, even if the railroad commission of the state of Mississippi were authorized by the legislature to supervise car service associations, the said order of the railroad commission is unconstitutional and void, both under the constitution of the state of Mississippi and the constitution of the United States, in that it gives to the shipper the right to set off alleged delayage, charges claimed by him against any claim of the railroad company at one dollar per day and this is the taking of the property of the railroad company without due process of law. (4) That, even if the railroad commission is granted the right under the law to supervise car service associations, the said charge made for delayage is unconstitutional and void, for the reason that neither under the Code nor under the statute law is the railroad commission given the power to regulate and fix on railroad companies either penalties or fixed charges. (5) That That said orders of the railroad commission, even if it had the right to regulate the same, is arbitrary and oppressive, and fixes a penalty on railroad companies, ignoring entirely the element of actual damages."

The provision of Rule 10 of the Mississippi railroad commission involved is quoted in the opinion of the court.

*Henry, Barbour & Henry,* for appellant.

The fourth paragraph of rule ten of the demurrage and delayage rules had no purpose other than to give to consignees the benefit of delayage mentioned therein. Otherwise the paragraph is meaningless. It is true that the word, consignees, is not used in the paragraph, but unless it be applicable to a consignee the true intent of the rule will, in many cases, not be attained. The preceding part of the rule applies to demurrage and delayage as between the railroad company and the shipper. The fourth and fifth paragraphs can be of no concern to the

shipper for the reason that when the car leaves the shipper's hands he has nothing further to do with it, and the contents of the car have become the property of the consignee.    The railroad company has done its duty as regards the shipper when the car is started forth upon its journey to the consignee.    So long as the shipper holds the car by reason of failure to load or because he has not given shipping instructions or because he has improperly loaded the car, he is liable to demurrage; and when the car is properly loaded and shipping instructions given, bill of lading must be issued, and if the car is not forwarded upon its journey within twenty-four hours thereafter, then the railroad company is liable to the shipper for delayage.    This part of the rule is for the purpose of preventing the shipper from accumulating and holding idle many cars without compensation to the railroad company, and to prevent the railroad company, after the cars are properly loaded and shipping instructions given it, from blocking the shipper's siding by keeping cars thereon, without compensation.    But no such reciprocal rights and duties exist between the railroad company and the shipper after the car leaves the shipping point.    If the car is side-tracked indefinitely, the shipper loses nothing, for the consignee must pay him just the same whether or not delivery be made to the consignee within a reasonable time; and in such case the consignee must look to the railroad company for redress or reimbursement.

After the shipment goes forward, the delivery or non-delivery of the consignment is then a matter between the railroad company and the consignee, and their rights and duties are then reciprocal.    The railroad company must deliver and the consignee receive within a reasonable time, and if either fails in the duty the other must be compensated.    Accordingly the demurrer should have been overruled.

Under the second paragraph of rule ten in question it is not necessary for the declaration to set forth the failure of the railroad company to give the notice required, nor is it necessary to set forth its failure to deliver the freight at its depot or ware-

house; nor, in case of shipment for track delivery, to allege that cars were not placed accessible for unloading. For all of the foregoing must be defensive matter.

Certainly the consignee makes out a *prima facie* case when he alleges and proves that the car was not delivered to him in a given number of days and not within a reasonable time.

It will be noted that the court below expressly ruled against the appellee as to all the other questions raised by the demurrer, under authority of *Keystone Lumber Co. v. Yazoo, etc., R. Co.,* 90 Miss. 391, 43 South. 605.

*Edgar L. Brown,* on the same side.

The delayage charge is no more a penalty than is a demurrage charge. Demurrage is imposed as a compensation to the railroad company for a breach of obligation to load or unload promptly upon the part of shipper or consignee. Delayage is imposed as compensation for the railroad company's breach of duty to furnish promptly cars and transportation, the compensation to be due to the shipper or to the consignee as may be proper.

It will not do to say that delayage is a penalty because imposed without reference to whether or not the breach of duty results in damage to the shipper or the consignee. The same logic would make imposition of demurrage a penalty, for demurrage is imposed whether the railroad company has any immediate need or not for its cars.

Under the language of rule ten of the railroad commission effective June 18, 1904, delayage may be recovered either by the consignee or the shipper.

It will be noted that the court below held on the hearing of the demurrer that paragraph four of rule ten was not applicable to the case made by the declaration, because the consignee could not avail himself of such paragraph. Certainly this was error, and the judgment must be reversed.

*Mayes & Longstreet,* for appellee.

A study of the entire code of rules promulgated by the railroad commission of our state shows that the railroad commission had clearly in its mind the interests and the rights of both the shipper and the consignee.    There is no question of *casus omissus.*    Considering rule ten as a whole and paragraph by paragraph, it will be seen that it deals throughout with the questions arising between the shipper on the one hand and the railroad on the other and also has aspects toward the consignee.

The first paragraph of the rule provides for demurrage in favor of the railroad company as against the shipper, and because of the shipper's failure to load or to give proper instructions. The second paragraph provides for notice to be given by the railroad company to the shipper.    The third paragraph prescribes the obligation of the railroad company to the shipper immediately to issue bill of lading and to ship out the car; and default in these duties is expressly declared to raise a liability to the shipper.    Then comes the fourth paragraph which, after the declaration as above, in express terms of a liability to the shipper for failure to start the car on its trip within the period prescribed begins with the word, "likewise."    It says, "likewise, when cars are detained in transit, one dollar per day will be charged for each day or fraction of a day," etc.    Charged to whom?    That the charge is to be in favor of the shipper is not only shown by the entire context of this paragraph, but also by the use of the insignificant introductory word, "likewise."

It is clear that the whole of the rule ten deals with the initiation of the shipment and it continuance over the route until its arrival at the point of delivery where the consignee is supposed to be.    But the rule has no aspect whatever towards the dealing with a shipment at the point of destination or towards any dealing between the consignee and the railroad company.

The matter of the handling of the consignment at the point of destination and the matter of the reciprocal rights of the com-

pany and the consignee are dealt with in rules one and seven and not in rule ten.

Learned counsel for appellant set forth the anomalous condition of affairs that would be produced if it were held that the rule of liability cannot be invoked by the consignee in that not the shipper, who may have been paid for his goods, but the consignee instead should be entitled to the penalties imposed by the rule on account of delayage. The argument of opposing counsel is however misleading, for it assumes that it is always the consignee who is the owner. As a matter of fact it is often the case that goods are shipped to the order of the shipper, and title does not shift until actual delivery to the consignee at place of delivery.

This suit was indubitably one brought for recovery of delayage and for recovery of one dollar per day penalty thereunder, and not for actual damages. And it is only on this view of the matter that the declaration is maintainable. The declaration has but one count, and even if that one count contained terms broad enough to base thereon a demand for damages at common law and also a demand for a penalty under the above rules of the railroad commission, it would be still demurrable under the decision of this court in *Illinois, etc., R. Co. v. Abrams,* 84 Miss. 456, 36 South. 542.

WHITFIELD, C. J., delivered the opinion of the court.

The declaration in this case is decidedly ambiguous as to what it means to count upon, whether the common-law liability, or the liability arising under that part of rule ten of the demurrage and delay rules, adopted by the railroad commission June 8, 1904, effective June 18, 1904, in which it is provided as follows. "Likewise where cars are detained in transit by being switched to some track between point of shipment and destination, one dollar per car will be charged for each day or fraction of a day of delay thus caused, and no free time in such cases be allowed." If there were nothing before us but the declaration

itself, excluding the exhibits, then manifestly a demurrer predicated on the ground that such declaration contained two antagonistic clauses in one count—the whole declaration consisting merely of that one count—should be sustained on the authority of *Illinois, etc., R. Co. v. Abrams,* 84 Miss. 456, 36 South. 542. But the demurrer in this case does not present that ground, as we think, with sufficient clearness.   There is certainly no ground of demurrer that can be said to present it, clearly or otherwise, unless it be the first ground, which may be called "the general welfare clause" of the demurrer, to wit, that "no cause of action is stated in said declaration."   But, in addition to this want of clear presentation to the court below of this point, it is made manifest, through the whole course of the trial below and here, especially by the briefs on both sides, that no such ground for demurrer was presented to the court below, or passed on by the court below; and if we were to sustain the demurrer on this ground, we, an appellate court, would be sustaining the demurrer on a ground not passed on by the court below at all.   We do not think this is fair to the court below.

But, turning now from this view of the question, considered by itself alone, we are bound to treat the declaration as if the exhibits were all set out on the face of the declaration.   So, looking at the declaration, it is plain that the declaration, very inartificially drawn, if it intended to count on the violation of this rule ten alone, nowhere alleges that the delay was caused, in the language of that part of rule ten above quoted, "by cars being detained in transit, by being switched to some track between point of shipment and destination;" in other words, from all that appears from the declaration, aided by the exhibit, the suit may have been for a mere general delay, and not for the specific delay mentioned as arising from sidetracking cars in transit.   If this last is the cause of action meant to have been counted upon, it was the easiest possible thing for the pleader to have so stated in the declaration; and since he did not so state, and since the pleading must be viewed on demurrer most strongly

against the pleader, we think the demurrer was properly sustained on this ground alone. But we also think that the justice of this cause requires, in view of the course of the trial in the court below and here, that this cause should be remanded, with leave to amend pleadings so as to present the real ground relied on. Indeed, the chief object of this suit seems to have been to test the constitutionality of paragraph four, of rule ten, above set out, and also to determine the question whether the right of suit conferred by this paragraph can be availed of by the consignee. This last question was settled by the principles announced in *Yazoo, etc., R. Co. v. Keystone Lumber Co.,* 90 Miss. 391, 43 South. 605. We reaffirm, in their full extent, the principles announced in that decision, and those principles make it perfectly clear that this paragraph four of rule ten did embrace the right of action by a consignee in the case stated, or attempted to be stated, in this declaration, viewed as with exhibits attached.

It is said in the briefs for appellants, and it seems to be agreed to in the brief for appellees, that the court below held on this demurrer that this paragraph four of rule ten was not applicable to the case made by the declaration, because the consignee could not avail himself of said paragraph. If this was what was held by the court below, it was clearly error. We therefore hold, in this case, that paragraph four of section ten does embrace the consignee; but we further hold that the action of the court below was correct in sustaining this demurrer on the sole ground that the declaration does not aver that the delay sued for was delay caused by sidetracking the cars in transit between the point of shipment and destination. In view of the very confused state of the case, as presented by the declaration, and also in view of the failure on the part of the defendant to put its ground of demurrer clearly on the point we have indicated, and in view, also, as above stated, of the whole course of the trial below and here, it would certainly be unfair to the court below, as well as to the plaintiff, to deal with the demurrer as presenting to the

court below a ground not argued there or here and not clearly presented by the demurrer.

For this reason, the judgment of the court below in sustaining the demurrer is affirmed, solely on the ground above indicated; but the action of the court below in dismissing the suit is reversed, and the cause remanded with leave to both parties to plead further, as they may be advised.

*Reversed.*